Lee F. Hoffman, Esq.  SBN: 308941
LAW OFFICE OF LEE F. HOFFMAN
2055 Junction Ave. Ste 215
San Jose, CA 95131
(408)883-2220
leehoffmanjd@gmail.com

Attorney for Plaintiff
**EMILIANO ONTIVEROS**

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| EMILIANO ONTIVEROS,<br><br>        Plaintiff,<br><br><br>        v.<br><br><br>CITY OF SAN JOSE; and DOES 1 to 10 inclusive,<br><br>        Defendants. | Case Number: 5:26-cv-2418<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES**<br><br>    1.  **Excessive Force**<br>    2.  **Failure to Intervene**<br>    3.  **Unconstitutional Customs and Practices - Threat Assessment**<br><br>**[JURY TRIAL DEMANDED]** |

Plaintiff EMILIANO ONTIVEROS alleges violations of his Constitutional rights and complains of

Defendants and alleges as follows:

UNDERLINE JURISDICTION AND VENUE

1.  Pursuant to 28 USC §1331, this Court has jurisdiction over this matter because it alleges

    causes of action or claims arising out of the United States Constitution and the laws of the

    United States, including but not limited to:  42 USC §1983 and 1985.

2.  As the conduct alleged herein occurred in Santa Clara County, State of California, venue

    of this action lies in the United States District Court for the Northern District of California

    by virtue of 28 USC § 1391(b).

PARTIES

3. Plaintiff, EMILIANO ONTIVEROS is, and at all relevant time was, a resident of Santa Clara County.  He is 39 years old.

4. Defendant CITY OF SAN JOSE (hereinafter "City") is, and at all relevant times alleged herein was, a public entity situated in the County of Santa Clara, State of California, and organized under the laws of the State of California. The City is, and at all relevant times alleged herein was, responsible for supervising, enacting, and enforcing the conduct, policies, practices, hiring, retention, supervision, and training of the San Jose Police Department and its subordinate units, officers, agents, and employees. The City is liable for the intentional, reckless, and negligent acts of all the aforementioned parties, personnel, and entities as described herein.

5. Defendant Doe number 1 (hereinafter "Officer 1") is, and at all relevant times alleged herein, was a police K-9 handler employed by the City of San Jose.  In committing the acts and omissions alleged herein, Doe number 1 acted under color of law and within the course and scope of his employment with the City.

6. Defendant Doe number 2 (hereinafter, "Officer 2") is and at all relevant times alleged herein, was a police officer employed by the City of San Jose.  In committing the acts and omissions alleged herein, Officer 2 acted under color of law and within the course and scope of his employment with the City.

7. Defendant Does numbers 3-10 (hereinafter Officer(s) 3-10) are and at all relevant times alleged herein, were police officers employed by the City of San Jose.  In committing the acts and omissions alleged herein, Officers 3-10 acted under color of law and within the course and scope of their employment with the City.

STATEMENT OF FACTS

8. Based on the limited information provided in San Jose Police Report 2023-233180453, on

March 20, 2024, defendant Does 1-10, attempted to serve an arrest warrant on Mr. Ontiveros while he was in his car. The arrest warrant was for an armed robbery and multiple mail thefts. Mr. Ontiveros had been identified in the armed robbery by a confidential informant based on his movements and mannerisms and not any positive identification.

9. On the date in question Mr. Ontiveros noticed an SUV following him while he was driving. Thinking it was suspicious, he pulled over near 2686 Toy Lane, San Jose. He was then boxed in by other vehicles. He attempted to flee in his vehicle but was unsuccessful. Once Mr. Ontiveros saw the police officers, he fled on foot to avoid arrest. He jumped at least one fence and fled into a residential neighborhood where he hid behind a bush. He never possessed or displayed a weapon during these events. He never made any verbal threats toward officers. He simply fled on foot.

10. Unknown Doe Defendants and other police officers pursued Mr. Ontiveros. This search involved more than a dozen police officers, the use of a remote-controlled drone aircraft, and a police K-9 dog.

11. Once the police officers closed in on Mr. Ontiveros and he could hear them in the area, he decided to surrender.

12. Mr. Ontiveros called out to the police that he wanted to surrender. Mr. Ontiveros then came out from his hiding position in the bushes and began to follow the commands of the first police officer he encountered. At no time after he made his location known to officers did Mr. Ontiveros offer any passive or active resistance to the police officers and only attempted to surrender. He was mauled by a police dog anyway.

13. Mr. Ontiveros put his hands up when instructed to do so by officers. [See a series of 6 screenshots from the police body camera showing Mr. Ontiveros with his hands up and getting down on the ground as instructed, a true and correct copy of which is attached hereto as EXHIBIT 1]. He then got face down on the ground as instructed by officers. He never made any sudden movements or motions to a pocket or his waist band.

14. After following all these instructions, Officer 2 delivered a strike to Mr. Ontiveros' back

with the barrel of his military-style assault rifle.  [See a series of 3 screenshots from Officer 2's body camera a true and correct copy of which is attached hereto as EXHIBIT 2].   He screamed at Mr. Ontiveros to get his face on the ground.  Mr. Ontiveros was already on the ground in the prone position (face down) but with his head off the ground.  Then he proceeded to back up once Mr. Ontiveros assented to his demand to put his face on the ground.

15. It is unknown why Officer 2 backed away from Mr. Ontiveros.  Mr. Ontiveros was laying with his face in the dirt, arms outstretched as much as possible in the area in which he was commanded to lie down.  Officer 2 had a significant tactical advantage over Mr. Ontiveros because his military-style assault rifle was pointed straight at Mr. Ontiveros' back as Mr. Ontiveros laid prone on the ground.  In fact, Mr. Ontiveros was under complete control of Officer 2 and had complied with all the instructions he was given.

16. As Officer 2 was backing off, a police dog can be seen in the frame for the first time.  It was on Mr. Ontiveros and was biting him.

17. Once Officer 2 had backed off completely, Mr. Ontiveros can be heard saying, "hey dude. That's not really necessary dude," as the dog could be seen biting shaking Mr. Ontiveros' right arm.  Officer 2 responded, "Shut the fuck up! Put you face on the ground, put your God damn face on the ground!"

18. The K-9 bit Mr. Ontiveros on the head and arm causing serious lacerations and puncture wounds.  Mr. Ontiveros could be heard screaming in pain as the dog's teeth tore at his flesh for approximately 30 seconds.

19. Mr. Ontiveros was placed in handcuffs and taken to a police vehicle.  At no time following Mr. Ontiveros' surrender during his arrest did Mr. Ontiveros offer any passive or active resistance.  He complied with every order, and yet he was still mauled by a police dog.

20. As a result of the injuries inflicted by the K-9 police dog, Mr. Ontiveros suffered numerous lacerations, puncture wounds, and tears of his flesh.  These wounds took weeks to heal and caused a great deal of pain to Mr. Ontiveros.  Mr. Ontiveros endured numerous

hospital visits and has had to undergo physical therapy due to nerve damage to his right arm from the bites.

21. Mr. Ontiveros' injuries could have been easily avoided since Officer 2 had a military-style rifle pointed directly at his back while Mr. Ontiveros was lying on his belly as commanded.  The use of the dog was totally unnecessary, and as such, excessive.

22. As Mr. Ontiveros was being mauled by the police K-9, an unknown number of police officers stood only a few feet away.  They did nothing to stop the K-9 from tearing into Mr. Ontiveros' flesh as he screamed in pain.  Mr. Ontiveros had shown he was surrendering and had been following commands.  None of the Doe Officers did anything to help a compliant subject as his arm was being shredded by the K-9.  They had a duty to protect Mr. Ontiveros once he evidenced his submission.  Instead, Officer 2 backed off in order to let the K-9 bite him.  Neither Officer 2 nor any other Officer did anything to help Mr. Ontiveros.  Not one of the Officers did anything to stop this unconscionable and vicious behavior in contradiction to their duty to protect the public, even Mr. Ontiveros.

23. It should be noted that Mr. Ontiveros was not armed at the time of his arrest.  No firearm was located in his vehicle or his residence when searched by police.  Mr. Ontiveros was never charged with the armed robbery which formed part of the basis for the arrest warrant obtained by police.  He was charged with five (5) counts of violating *Cal. Pen. C.* §530.5(c)(3) and one count of violating *Cal. Veh. C.* §10851.  Multiple enhancements and allegations related to these counts were also part of the complaint case number C2404392)

## STATEMENT OF DAMAGES

24. Mr. Ontiveros suffered numerous puncture wounds, lacerations, and torn flesh over his face and arm.  He was in a great deal of pain for weeks and he had to be hospitalized for his injuries.  He also has nerve damage as a result of the K-9 attack.  This will require physical therapy that Mr. Ontiveros cannot afford at this time.  That physical therapy may not be able to reverse the damage done by the K-9 to Mr. Ontiveros' arm.

25. This experience was frightening and traumatic for Mr. Ontiveros to say the least.  This

experience resulted in significant medical and related expenses and will likely necessitate continuing medical treatment and related expenses in amounts to be determined according to proof.

26. The acts and omissions of all Officers were willful, wanton, reckless, malicious, oppressive and/or done with a conscious or reckless disregard for the rights of Mr. Ontiveros. Plaintiff therefore prays for an award of punitive and exemplary damages against these defendants in an amount according to proof.

27. Plaintiff has retained private counsel to represent him in this matter and is entitled to an award of attorneys' fees and costs.

CAUSES OF ACTION

FIRST CAUSE OF ACTION

[42 U.S.C. §1983 – FOURTH AMENDMENT – EXCESSIVE FORCE – AGAINST DOE OFFICERS]

28. Plaintiff hereby alleges and incorporates by reference as though fully set forth herein all prior paragraphs of this Complaint.

29. The Officer Defendants violated the Mr. Ontiveros's clearly established right to be free from the intentional and unreasonable use of excessive force as guaranteed by the Fourth Amendment to the United States Constitution.

30. An objectively reasonable officer would have known that the use of force upon the Plaintiff was excessive and could cause serious injury.  The rifle strike by Officer 2 could have resulted in a negligent discharge to Mr. Ontiveros' back.  The excessive nature of the force used to effect the arrest of Mr. Ontiveros was readily apparent given the fact that once Mr. Ontiveros decided to give up and announced his location to the officers, he was compliant, put his hands up, and laid face down as commanded [See EXHIBIT 1]. Additionally, he was covered by Officer 2's rifle and was submitting to the Officers' authority.

31. Only after Officer 2 removed himself from the tactically advantageous position of having the barrel of his rifle in Mr. Ontiveros' back did the police K-9 bite Mr. Ontiveros. Mr. Ontiveros had not made any furtive movements, displayed any weapon, or attempted to get up from his prone position. Allowing the police K-9 to bite Mr. Ontiveros' face and arm after he had given up and complied with officers' commands were unnecessary and were therefore excessive. Such a situation would lead a reasonable officer to believe that the force he was employing would create a substantial risk of death or serious bodily harm.

32. The Fourth Amendment does not permit the use of deadly force to apprehend a suspect who poses no immediate threat to the officer or others. No reasonable officer would believe that a suspect lying in the prone position with a rifle pointed directly into his back and following commands would constitute an ongoing threat of such a nature as to warrant the further escalation of force to deadly force (the drawing/pointing of the firearm and striking Mr. Ontiveros in the back with the barrel of the rifle being the first use of force).

33. Officer Defendants were integral participants to each other's constitutional violations, in that they were aware of the constitutional limitations on the use of force, were aware that Mr. Ontiveros was not actively resisting after announcing his location and complying with Officers' commands, that he posed no more than a hypothetical and attenuated threat to anyone, that he was surrounded and could not flee, and that he was attempting to surrender. Yet these defendants were aware of Officer 1's decision to employ his K-9. Officer 2's actions in backing away from Mr. Ontiveros despite being close enough to forcefully jab him in the back with the barrel of his rifle can reasonably be interpreted as clearing the way for the K-9 to come in and inflict serious physical harm on Mr. Ontiveros.

34. It is unclear at this time whether or to what degree other officers participated in this excessive and unnecessary use of a K-9 on Mr. Ontiveros because the Police department refuses to release all the body camera video. The District Attorney's Office has only

released limited portions of the body camera video despite the discovery requests of Mr. Ontiveros' defense attorney for all the body worn cameras of the officers involved. Additionally, the San Jose Police Department has refused to release the video

35. Not only was Defendant Officer 1's decision to deploy the dog unreasonable, but his handling of the canine while its jaws remained clamped onto Mr. Ontiveros' arm evinced malice and sadism. According to industry standards, the average police canine bite should last between five and fifteen seconds. As the dog tore into Mr. Ontiveros' flesh, he begged the officers to stop. There was nothing more he could do to comply with the officers because his right arm was being mauled. Allowing the dog to continue for approximately 30 seconds after it was used without necessity evidences a depraved indifference to Mr. Ontiveros' rights and his basic humanity.

36. The harm to Mr. Ontiveros was foreseeable to these Defendants.

37. These Defendants acted willfully, wantonly, maliciously, oppressively, and with conscious disregard to Mr. Ontiveros' rights.

38. These defendants' misconduct was the moving force that caused Plaintiff's injuries. WHEREFORE, Plaintiff prays for relief as hereinafter set forth.


SECOND CAUSE OF ACTION

[42 U.S.C. §1983 – FAILURE TO INTERVENE – AGAINST DOE OFFICERS]


39. Plaintiffs hereby alleges and incorporates by reference as though fully set forth herein all prior paragraphs of this Complaint.

40. All other Officer defendants on the scene had a duty to intervene and put a stop to Mr. Ontiveros' mauling when Officer 1 ordered his K-9 to bite Mr. Ontiveros without legal justification. These defendants had the time, ability, and opportunity to observe what was happening to Plaintiff and to stop it. They owed Plaintiff that basic duty. But these defendants stood by. No one uttered a word of protest, and no one took any physical

action to save Mr. Ontiveros while his arm was being punctured and torn by the K-9's teeth.

41. Any objectively reasonable officer would have known it was necessary to intervene to stop Plaintiff from being seriously injured or killed.

42. These defendants' failure to intervene were moving forces that caused Plaintiff's injuries and needless suffering.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

THIRD CAUSE OF ACTION

[42 U.S.C. § 1983 – MUNICIPAL LIABILITY FOR CUSTOMS AND PRACTICES (THREAT ASSESSMENT) – CITY OF SAN JOSE]

43. Plaintiff hereby re-alleges and incorporates by reference as though fully set forth herein all prior paragraphs of this Complaint.

44. The San Jose Police Department's official Canine Policy requires that all uses of a canine to apprehend a suspect must meet certain enumerated criteria.  Those criteria are:

   a. The handler reasonably believes that suspect is committing, has committed, or is about to commit a felony crime, or a misdemeanor crime involving a weapon or violence; and

   b. There is a reasonable belief that the individual poses an immediate threat of violence or serious physical injury to any person; and

   c. There is a reasonable belief that the suspect is actively fleeing, physically resisting, or threatening to resist arrest and the use of the canine would overcome such resistance, prevent injury to arresting officers or other persons and ensure the apprehension of the subject; or

   d. The individual is believed to be hidden in an area where the use of the canine would reduce the threat of violence or serious physical injury to officers or members of the public.

45. Despite the existence of this official policy, the practice in the field of the San Jose Police Department seems to be to treat every encounter involving suspects fleeing on foot and/or hiding, as an "immediate threat" regardless of the circumstances. This is especially true when a K-9 officer is on scene. This practice by the San Jose Police allows K-9 handlers to use their dogs on surrendering subjects, unarmed subjects who are hiding and pose no more than a hypothetical threat, or suspects whose initial crime is so attenuated in time as to no longer form the basis for any existing threat's "immediacy." In one such case, an unarmed subject with his hands in the air was deemed an "immediate threat" (just like Mr. Ontiveros). In another, an unarmed sleeping man in bed was an "immediate threat." In yet another case, the police deployed a K-9 when a suspect was hiding inside a garbage can surrounded by armed police and attempting to surrender. He was deemed an "immediate threat." Several other unarmed individuals who were hiding from police, and who had made no threats or overtures of harm toward them were deemed "immediate threats" as well.

46. Among all factors relevant to the use of force, the immediacy of the threat posed by the suspect is the most important. While the City's written policy gives lip service to that long-established dictum, in the field, this policy is not adhered to in a reasonable or professional manner in all cases. This is one such case where police used unreasonable and excessive force on an unarmed suspect who had abandoned all attempts to flee and was complying with police commands.

47. According to a San Jose police lieutenant deposed in another action, canine handlers are trained that the "immediate threat" their policy requires for a canine deployment may be found in any situation where the suspect has the "opportunity and ability" to cause harm to an officer, coupled with the suspect "actively fleeing" from the officers. "Actively fleeing" from an officer would include any scenario where the suspect is hiding. It is immaterial that a suspect might be unarmed or have made no threatening overtures. If he is fleeing or hiding and has the opportunity and ability to cause harm, he is deemed an immediate threat, and a canine may be used. Because any police encounter with the

public presents some "opportunity" for harm to the officer, and because all public persons have some "ability" to harm an officer, this allows the use of a K-9 on any person who is fleeing or hiding from police.  This practice effectively subsumes the written policy's requirement of showing an immediate threat into what should have been a separate requirement of showing that a suspect is fleeing or hiding.  This policy shortcut has led to the unnecessary and unlawful use of severe force on suspects who posed little-to-no actual threat to officers or the public.

48. At the time Mr. Ontiveros was mauled by the K-9, he was not hiding.  He was not fleeing.  He was on his belly with his arms outstretched.  He already surrendered, knelt on his knees with his hands up, and gone down to his stomach as commanded.  Officer 2 had forcefully jabbed him in the back with his rifle.  Officer 2 could have covered Mr. Ontiveros with that rifle while another officer placed handcuffs on Mr. Ontiveros, yet the Officer 1 assessed Mr. Ontiveros to be such a threat that the use of a K-9 was called for.

49. The City of San Jose is responsible for the training of the Officers involved in this incident and has failed to break the custom and practice of their police officers who assessed Mr. Ontiveros as an immediate threat despite him obviously surrendering and submitting to the Officers' authority.  This failed assessment led directly to the deployment of the police K-9 that mauled Mr. Ontiveros' face and arm.

50. These customs and practices were so closely related to the deprivation of Plaintiffs' rights as to be the moving force that caused his injuries.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

1. For compensatory and economic damages according to proof;

2. For general damages according to proof;

3. For an award of exemplary or punitive damages against the individual defendants in the amount of $1,000,000;

4.  For and award of attorney's fees and costs a permitted by law; and

5.  For such other and further relief as the Court may deem necessary and appropriate.

<u>JURY TRIAL DEMAND</u>

Plaintiff hereby requests a jury trial on all issues so triable.


Dated:  July 17, 2026                                    Law Office of Lee F. Hoffman


                                                          /s/ Lee F. Hoffman
                                                          Lee F. Hoffman, Esq.
                                                          Attorney for Plaintiff

# EXHIBIT 1













# EXHIBIT 2



2024-03-20 15:41:49 -0700
AXON BODY 3  X60A7949Q



